MUTUAL RESERVE FUND LIFE ASSOCIATION v. FARMER.

Opinion delivered November 5, 1898.

1. LIFE INSURANCE—PAYMENT—PRESUMPTION.—In a suit upon a policy of life insurance which provided that the policy should not be in force until the first payment of the premium was made, where it was conceded by the insurance company that the fact of delivery of the policy raised a presumption of payment, proof that the general officers of the insurance company never received such payment is insufficient to rebut such presumption if it appeared that the local soliciting agent of the company had authority to receive such payment, and that he might have done so.   (Page 586.)

2. SAME—APPLICATION—WARRANTY.—Where, in an application for life insurance, the examining physician made certain interpolations in the applicant's answers without the latter's knowledge, but with the consent of the insurance company's agent, the insurance company is estopped from relying upon the falsity of such interpolations as a breach of the warranty in the application.   (Page 588.)

3. SAME.—Leaving unanswered a question in the blank application for insurance will not constitute a breach of warranty, especially where other answers indicate a want of knowledge on the subject.   (Page 589.)

4. SAME.—Where an applicant for life insurance, warranting his answers to be true, was asked whether he had ever had any illness, and answered "No," and thereupon was asked for what disease he had been treated by a physician, and answered that he had not been sick in ten years, his answer to the second question will be held to qualify his answer to the first, and proof that he had been ill ten years before will not establish a breach of warranty.   (Page 590.)

5. SAME.—Where an applicant for insurance was asked whether he had "had any illness, local disease, injury, mental or nervous disease or infirmity, or ever had any disease, weakness of the head, throat, heart, lungs, stomach, kidneys, bladder, or any disease or infirmity whatever," and answered that he had not had any of the diseases mentioned for ten years past, proof that he had taken chloroform with suicidal intent a year or two previously will not establish a breach of his warranty of the truth of his answers.   (Page 591.)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Jas. A. Gray* and *Rose, Hemingway & Rose*, for appellants.

There was no evidence to support the verdict. The evidence shows that the insured knew of, and made no objection to, the answers written by Ellsworth. If this were not true, the insured *ought* to have read over the application, and he can not urge that reason to avoid the agreements therein. 58 Ark. 281; 117 U. S. 519; 62 Ark. 47. By making Ellsworth his agent in answering these questions, insured bound himself by his answers. 53 Ark. 222; May, Ins. § 122; 70 N. W. 86. These answers and statements in the application are binding on the applicant, and their falsity avoids the policy. 91 U. S. 50; 90 Va. 290; 18 S. E. 191; 58 Ark. 528; 18 Sup. Ct. Rep. 300; 120 U. S. 183; 60 Fed. 727; 58 Fed. 940; 132 N. Y. 331; 74 Hun, 385. The effect of failure to disclose required facts is the same as misstating them. May, Ins. § 201–4; Bliss, Life Ins. § 52. The first premium was not paid in cash, and hence the policy never attached. 102 U. S. 211. The insured never accepted the policy, and hence the contract is not binding on either party. 23 Wall. 85; 92 U. S. 377; 32 N. Y. 619; 71 Hun, 104; 51 Fed. 689; 28 *id.* 705; 30 *id.* 545; 53 *id.* 208; 26 Atl. 78; 30 Nev. App. 589; 6 Bush, 450; 18 W. Va. 782; 18 Minn. 448; 17 *id.* 153; 98 Mass. 539; S. C. 103 Mass. 78; 13 B. Mon. 400; 27 Pa. St. 268; 40 Mo. 42; 32 Md. 108; 4 Allen, 116; 15 So. 639; 4 Ark. 251; 11 *id.* 689; 17 *id.* 78; May, Ins. § 53; 1 Biddle, Ins. § 140; 35 Pac. 736; 32 Ark. 399; 1 McCrary, 578. It was error to give the fourth instruction asked by appellee. 6 C. B. (N. S.) 437; 2 Kent, 557; 2 Whart. Cont. § 657. The contract was wholly in writing, and hence its construction was for the court. 20 Ark. 583.

*Wood & Henderson*, for appellee.

The policy was delivered to the assured in his lifetime, and while he was in good health. The contract was complete when the acceptance was mailed. 57 N. W. 184; 40 N. J. L. 476; 43 N. J. L. 300; 9 How. 390; 28 N. Y. Sup. 794; 122 N. Y. 244; 5 Fed. 229; 30 Fed. 902; 47 Fed. 869; 29 N. J. L.

486; 6 Wend. 103; Bacon, Ben. & Life Ins. § 266, *et seq.*. The evidence is sufficient to support the finding that the first payment was made as required.   Appellee made out a *prima facie* case of payment by showing the unconditional delivery of the policy.   31 Fed. 322; 12 Wall. 285; 24 Am. Rep. 344; May, Ins. §§ 56–60, 359–360–360 a, 360 b, 360 d; 17 Minn. 153; 35 N. E. 193; Bacon, Ben. Soc. & Life Ins. § 276, 277; 40 Ill. App. 266; 36 Pac. 113; 23 Pac. 869; 22 Fed. 586; 20 Fed. 232; 42 N. E. 137; 20 Wall. 560.   The failure of appellant to prove the non-existence of this fact, by the only witness who really knew the truth of the matter, must be construed as indicating the existence of the fact.   4 How. 242; 32 Mich. 394; 8 Porter (Ala.), 529; 27 W. Va. 16; 48 Mich. 465; 64 Pa. St. 120; 19 Am. & Eng. Enc. Law, 70, *et seq.*; Whart. Ev. § 1267; 7 Wend. 31, 33, 36; 10 Pick. 329; 8 Wheat. 407; 1 Greenl. Ev. § 51 and note.   Appellant's actions after notice of death were such as to estop it to allege the non-payment, if such were the fact.   22 Atl. 665; 80 N. Y. 108; 15 N. W. 453; 1 Atl. 2; 53 Ark. 494; 96 U. S. 577; 41 Fed. 512; 95 U. S. 326.   The evidence shows that there was no breach of warranty by failure of assured to fully and truly answer questions in application. There is nothing in the answers of the assured, taken as they were when he signed the application, which was untrue, or constituted a breach of warranty.   1 Bac. Ben. Soc. & Life Ins. §§ 204, 205, 205a; 6 Gray, 185; 24 Ohio, 345; 14 N. Y. 9; 59 N. Y. 557; 17 Am. St. Rep. 372; 120 U. S. 183; 43 N. J. L. 300; 21 Ohio, 176; 106 Pa. St. 28; 40 N. W. 386; 69 N. Y. 256; 25 Am. St. Rep. 182; 14 Otto, 199; 60 Fed. 236; 80 N. Y. 281; 36 Am. Rep. 617.   Since the appellant placed it in the power of the agent to do a wrong, it must bear the consequences.   42 Fed. 30; 26 N. E. 1082; 35 N. W. 430; 28 N. W. 47; 43 N. W. 373; 40 N. W. 386; 22 N. E. 954; 14 N. E. 271; 12 N. E. 609; 25 Atl. 227; 64 Ark. 257.   The solicitor and examining physician were the agents of the company, and not of the insured, in the preparation and forwarding of the application.   18 Pac. 291; 8 Pac. 112; 53 Ark. 222; 53 Ark. 497; 52 Ark. 11; 11 L. R. A. 341, and cases in note; 5 Cent. Rep. 211; 7 Western Rep. 90; 17 Hun, 95; 55 Miss. 479: 2 Hughes (U. S.), 531; 18 Blatchf. 386; 56

Ill. 402; 90 *ib.* 445; 93 *ib.* 96; 110 *ib.* 166; 109 Pa. St. 157; *ib.* 507; 69 Tex. 353; 43 N. J. L. 300; 39 Am. Rep. 584; 25 W. Va. 622; 8 S. E. 616; 13 Wall. 222; 21 Wall. 152; Bacon, Ben. Soc. & Life Ins. § 221, and cases in note 3; 21 Pac. 233; 28 N. W. 607; 12 Fed. 465; 14 Fed. 272; 58 Fed. 723.    The fact that appellant had taken an overdose of chloroform, and had been treated and attended by a physician for same, does not constitute a breach of the warranties.    14 Otto, 197; 58 Fed. 945; 7 C. C. A. 581; 45 Fed. 455; 1 Central Rep. 134; S. C. 1 Atl. 340; 17 Wall. 672; 32 N. W. 610; 41 Fed. 506; 112 U. S. 250; 33 N. E. 107; 92 N. Y. 274; 44 Am. Rep. 372; 53 Ga. 535; 12 Western Rep. 715; 3 Cent. L. J. 302; 58 Hun, 366; Bacon, Ben. Soc. & Life Ins. §§ 234, 235, 199. The company is estopped to set up a defense based on the wrongful act of its own agent.    16 N. W. 430; 59 N. W. 247; 59 N. W. 943; 43 N. W. 373; 50 Pa. St. 331; 89 Pa. St. 464; 76 N. Y. 415; 62 Md. 196; 1 Comst. 290; 12 Fed. 465.    See further as to estoppel and waiver:—41 N. W. 601; 16 Atl. 263; 51 Md. 512; 31 Am. 323; 41 Am. Rep. 647; 9 S. W. 720; 69 Fed. 71.

*Jas. A. Gray* and *Rose, Hemingway & Rose,* for appellant, in reply.

Mailing of the policy did not make it operative, because payment of the first premium was a condition precedent to the binding effect of the contract.    Benj. Sales, § 320; 1 Biddle, Ins. § 151; 28 Fed. 705; 30 *id.* 545.

BUNN, C. J.    This is a suit to recover on a policy of life insurance, and the defenses are several, and the first in order is that the policy, notwithstanding its delivery, under an expressed stipulation contained in the application for it, never in fact became operative.    The stipulation referred to is in these words:    "*That under no circumstances shall the insurance hereby applied for be in force until payment in cash of the first payment, and delivery of the policy to the applicant during his life and in good health.*"

The evidence in the case tended to show that the policy was placed in the mail at Hope, properly addressed to the insured at Hot Springs, early in the morning of the day in the afternoon of which the insured was taken with his last illness,

and that in due course it should have reached him before he was taken sick; and the court appears to have so found, and to have determined accordingly. This, of course, involves also the question whether or not the placing of a writing in the mail, properly addressed, with postage prepaid, as in this instance, is a delivery as a general rule, as the trial court held. As to this, we see no error, and the question is at last, does this case come under the general rule as to that particular? Or, in other words, was the first payment made before delivery, under special stipulations referred to above, so as to make the policy operative before the last sickness and death of the insured? All the other material issues in this case involve the breaches of special warranties. This one does not, but is a mere stipulation as to what shall not be a delivery so as to make the contract of insurance complete and effective.

The policy itself contains this recital: "*In consideration of the answers, statements and agreements contained in the application for the policy of insurance, which are hereby made a part of this contract, and of the payment of eighty dollars, as a first payment to be paid on or before the delivery of this policy, and the further payment of thirty dollars payable to the association within sixty (60) days from the date of this policy, for the general expense fund of the association, the Mutual Relief Fund Life Association does hereby receive Lucien Farmer, of Hot Springs, County of Garland, State of Arkansas, as a member of said association,*" etc.

Other than the presumption that may arise from this recital, taken in connection with the mailing of the policy and the receipt of the same by the family of the insured, if not by himself, there was absolutely no evidence of this first payment having been made at all, adduced on the trial. There is this to be said also that, besides Hartin, the agent who solicited for the insurance, and mailed the policy to the insured, and did all necessary things connected with the insurance, there was no one living who could testify as to this payment, since the officials of the company did not necessarily know whether or not it had been made; nor could the beneficiary, Mrs. Farmer. When Hartin was on the stand testifying, neither party asked him as to this payment, and he said nothing in reference

thereto. Each party seems to have been afraid of any answer on the subject he might make, and so the matter was left, each one claiming the benefit of the presumption that arises under such a state of things.

To guide the jury in concluding upon the evidence on this point, at the instance of the defendant company, the court gave the following instruction, which was in no way modified or affected by any other, to-wit:

"14. The possession of the policy by Farmer before his death is *prima facie* evidence that the first premium was paid, but it may still be shown that in point of fact it was not paid. The question for you to decide is whether the first premium was paid by Farmer while in good health; and in passing on this point you will fairly and impartially consider all the testimony in the case; and if you find from the preponderance of the evidence that the premium was not paid by Farmer while he was in good health, you will find for the defendant."

This certainly made a delivery of the policy a presumption that the first payment had been made, and cast upon the defendant company the burden of showing that in fact it had not been made. It showed by its officers, whose duty it was to have received the money had the same been paid to it, that they had never received it, and then the defendant, by a sort of counter presumption to rebut the presumption in favor of the plaintiff, referred to one of its by-laws, which made its agent and solicitor and the examining physician, in the collection of money, a representative and agent of the applicant for insurance, thus making the applicant responsible for money so paid, until it was actually paid into the treasury of the company. If this were all of it, it would seem that the former presumption would, in a way, be rebutted; but this not all of it, for, whatever may be the case in respect to other payments and collections of money, as regards the first payment the following clause in the contract between Hartin and the company, made subsequent to and in view of the by-law mentioned, makes Hartin the agent of the company, and not only so, but gives him authority, after paying the examining physician's fee out of it, to appropriate this first payment—in this case eighty dollars—to the payment of his own fee, thus:

"The compensation to be allowed said J. F. Hartin for securing said business on the year distribution deposit plan (presumably the kind of policy involved herein) shall be $8 for each $1,000 of insurance, payable out of the first payment thereunder, less the medical examination fee, which is to be remitted to the association with the application; or a receipt therefor from the physician must accompany the same."

The expression, "payable out of the first payment thereunder," especially when taken in connection with the manner of payment to the examining physician, makes it manifest that the agent had the right to retain as much of the payment as would pay his fee, which in this case is substantially the exact amount. Nor is this clause, so far as third parties are concerned, changed by the subsequent provision in the contract to the effect that the company might set-off against the agent's commission any debt it might have against him; but what follows indicates that subsequent commissions are mainly, if not exclusively, referred to in the provision. At all events, this part of the contract plainly makes Hartin the agent of the company in making the first collection, or rather authorizes him to act for himself, and in this he is not representing the applicant. The proof, therefore, that the payment was not in fact made to Hartin, we think, was insufficient to rebut the presumption of payment arising from the recital of the policy, and the jury's finding cannot be disturbed as to that.

The other issues raised spring out of the alleged breaches of the warranties in answers to questions propounded in the application to the applicant and answered by him through the agent, Hartin; he being, by a stipulation in the application, made the agent of the applicant, as is also the examining physician, as to all statements and answers in the application.

The following occurs in relation to the questions and answers of No. 15: "Q. How long since you consulted or were attended by a physician?" (This of course means how long since applicant consulted a physician concerning some disease or ailment of his own; probably such as are named in another question, preceding this, to-wit: No. 14, "Any illness, local disease, injury, mental or nervous disease or infirmity," and also

how long since he had been attended by a physician for such purpose.)

"A.   Don't know (about ten years.)"

"B.   State name and address of such physician?

"B.   Name (P. H. Ellsworth.)   Address (Hot Springs, Ark.)"

"C.   For what disease or ailment?

"C.   Have not been sick in ten years."

(This answer substantially conforms to the statement made in the first answer, "about ten years," included in parenthesis marks.)

"D.   Give name and address of each physician who has prescribed for or attended you within the past five years, and for what diseases or ailments?

"D.   Name————————, Address—————————.''

(This last question was not answered at all).

If the part of the answer to the first of this question we have quoted—"about ten years"—was made by the applicant, or by his authority, or his acquiescence in, or adoption of it, then it becomes one of his statements, which he warranted to be true.   But it is undisputed that these words were inserted by Dr. Ellsworth, and, it appears, in the presence and with the knowledge of Hartin, after the application had been signed by the applicant, and the real controversy is, whether or not the applicant authorized or adopted them, and of this, whether or not he was so situated at the time as to have seen what was written by Ellsworth, or to have heard what was said in relation thereto between the doctor and Hartin, the agent, and understood it, and by his conduct adopted it as his statement. This may be said in a general way also as to insertion of his name and address by Dr. Ellsworth in the answer to the next question.

It is not within our province to consider whether or not these questions and answers were or are material.   By contract and stipulation of the parties to the contract, each and every one of them is made material, and every answer is by agreement warranted to be true.   So, then, the trial court had only to consider, under this head, whether or not any one of these answers was made, as it appears, by the applicant, and, if so,

whether any one of them was false.   The applicant being dead, and he and Ellsworth and Hartin being the only persons pres- ent, or who may be shown to be present at the time, the only witnesses available to settle this fact were Ellsworth and Har- tin.   Their testimony is, apparently, somewhat conflicting; but we think it is more indefinite and uncertain than conflicting, for the difficulty at last is to say positively from their testi- mony, taken together, what really was the situation, and to say as much from the testimony of either one.   We express no opinion as to what weight should have been given to this testi- mony by the jury and the trial court; only we cannot say that, as we view it, it was so much in favor of the defendant as to per- suade us that the finding for the plaintiff by the jury on the point was the result of prejudice or passion.

The instruction on this point, given to the jury by the trial court, we think, fairly submitted to them the question whether or not the applicant consented to the insertion of the words by Dr. Ellsworth.   On behalf of the plaintiff, the court instructed the jury as follows: "2.   * * * and if said Ellsworth so wrote the said words after said application had been signed by the appli- cant, the said Lucien Farmer, and without the knowledge or con- sent of said Farmer, and if, after the said application had been so changed, the said Hartin, as such agent, forwarded it to the defendant at its home office for approval, and the said Farmer, at the time said application was so forwarded, did not know of such change, nor consent to the same, then the defendant is estopped from relying on the words so written by Ellsworth as .a defense to this action."   The defendant asked no instruction on this point, except one to the effect that the fact whether the applicant consented to the insertion by Ellsworth or not was not material, and this was refused, and we think properly so.

The applicant made no answer to question marked "D," but left the spaces for answers as to the name and address of the physician referred to blank.   If that was thought to be im- portant, the application for the policy should not have been ac- cepted until the answers were made by the applicant   Certainly, we could not say, under the circumstances, by this failure to fill out the blank for the answer, the applicant was suppressing

the truth, especially in view of his previous answers indicating a want of knowledge on the subject.

Were any of these answers of the applicant to the questions propounded to him in the application in fact false? And this question is narrowed down to this: Had the applicant ever had any illness, local disease, injury, mental or nervous disease or infirmity? And how long had it been since he had consulted or been attended by a physician? He answered that he had not been sick in ten years. The other question as to physician was answered by Ellsworth, applicant failing to answer the same. These answers were to questions numbered fourteen and fifteen, and on the evidence relating thereto the court, over the objection of defendant, gave the following instruction asked by plaintiff: "4. In determining whether the answer of Lucien Farmer to question fourteen of the application is untrue, you will consider the same in connection with answers to question fifteen; and if you find from the evidence that said Farmer, in his answer to question fifteen, intended to qualify his answer to question fourteen by saying that he had been ill, or had a disease or infirmity at some time more than ten years prior to that date, then, if it should be a fact that he¦ had had a spell of bilious fever at some time more than ten years prior to the date of said application, that would not render the answer to question fourteen false or untrue."

The conflict between the statements of the applicant in answer to question fourteen, and his answer to question fifteen, if conflict at all, consisted in this: In answer to fourteen (whether or not he had ever had any of the ailments named) he said "No;" and in answer to the corresponding question in fifteen he said he had not been sick in ten years. We think it but fair to say that he meant that he had not been sick in ten years, and, in saying so in answer to fifteen, he intended to qualify his answer to fourteen that far, and as this apparent conflict appeared on the face of the application, the defendant should have refused to approve the application, if it was deemed important, and, in failing to do so, the point was waived, especially as the examining physician explained the nature of the ailment about ten years previously.

The last question, No. 12, was, "has the applicant ever

had any illness, local disease, injury, mental or nervous disease or infirmity, or ever had any disease, weakness of the head, throat, heart, lungs, stomach, kidneys, bladder or any disease or infirmity whatever?" This question was answered by the examining physician (whose answers the applicant made his own) by stating, in effect, that applicant had had none of the diseases mentioned within ten years.

On this particular point, Dr. John H. Gaines, a practicing physician of Hot Springs, was the only, or at least the principal, witness, and he states in substance that, about one year or more before the death of the insured, "I saw him (Farmer) in an insensible condition. The room [in which he was at the time] was full of the fumes of chloroform, and he was under its influence, from which he soon recovered. I laid him on the floor, but, before anything was done, I saw that consciousness was returning. He had not taken enough chloroform to be in a really dangerous condition. I think I gave him a hypodermic injection. There was a vial there with a chloroform label on it, which contained a small quantity of that drug. Before I went away he recovered consciousness, and had spoken rationally. I think I stayed there not more than fifteen minutes. This was a year or more before Farmer died. After he took chloroform he spoke to me once about it. Mentioned my services and his intention to pay for them. Said he regretted the act very much; that he was going to live a changed life, and be a different man. He never paid me anything. He was engaged in the fire insurance and real estate business. The chloroform he took would not permanently affect his health. I do not know whether he was sufficiently conscious to know that I was there. When called to go to see him, I was at my office nearly on the opposite side of the street. I think he would have recovered if I had not done anything for him."

This presents a question rather difficult, if not impossible, of solution. It is contended that the attempt to commit suicide (assuming that such was shown) was an exhibition on the part of the applicant which, had it been known to the company, would have certainly deterred it from accepting the risk. We are inclined to think that may be a sound conclusion. But that is not exactly the question. The question is, first, was

such *attempt*, or the *condition of mind* at the time which con-
duced to it, a nervous or mental disease, or any other disease
named or contemplated in the question? The suicidal mania is
held by many, and perhaps most, of the authorities on the sub-
ject to be a mental or nervous disease, and if the stage of mania
has been reached, it would seem that that view of it is correct;
but the proof of the isolated attempt in this case is meagre,
while there is none as to a mania in the sense of disease. We
know nothing of the circumstances which superinduced such an
attempt, if such indeed was ever made, and therefore are not
willing to say that applicant answered falsely the question pro-
pounded, in this view of it. If the *effect* of taking the chloro-
form is the real subject of this inquiry, we are not sure that
such is an ailment in the meaning of the question. Nor are
we. sure, from Dr. Gaines' testimony, that the effect of the
taking of the chloroform was so material as to become a sub-
ject of question and answer at all in the application.

In *Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y. 72, quoted
with approval by this court in *Reutlinger* v. *Providence L. Ass.
Co.*, 58 Ark. 535, it was said: "In construing contracts, words
must have the sense in which the parties used them, and, to
understand them as the parties understood them, the nature of
the contract, the objects to be attained, and all the circum-
stances must be considered. By the questions inserted in the
application, the defendant was seeking for information bearing
upon the risk which it was to take, the probable duration of
life to be insured. It was not seeking for information as to
merely temporary disorders or functional disturbances, having
no bearing upon general health or continuance of life." This
disposes of the question also of Dr. Gaines' attendance.

The instructions, taken together, seems to have presented
the case fairly well—at least we see no reversible error in the
judgment, and the same is affirmed.

BATTLE, J., (dissenting). The contract of insurance sued
upon provides that it shall not go into effect or become opera-
tive until the first payments due thereon should be made. I
think the evidence fails to show that these payments were

made, and, consequently, the policy or contract never was binding, and was of no effect.

In the contract of insurance—calling and referring to it as such in this opinion for the sake of convenience—Lucien Farmer, the insured, warranted the statements and answers to questions contained in his application for a policy of insurance "to be full, complete and true," and agreed with the Mutual Reserve Fund Life Association, the insurer, that, if they were not full, complete and true, the policy or contract of insurance executed to him should be null and void. Were they full, true and complete? To the following four questions: "how long since you were attended by a physician," "state name and address of such physician," "for what disease or ailment," and "give name and address of each physician who has prescribed for or attended you within past five years, and for what disease or ailments, and date,"—he answered in his application as follows: to the first, "don't know;" the second he did not answer; to the third, "have not been sick in ten years;" and to the fourth he made no response. These questions and answers are contained in the application, which is dated "June 19, 1893." Sometime in 1892 Dr. Gaines, a physician, was called to see him, when he was under the influence of chloroform, and in an insensible condition. After this he spoke to the doctor about it; mentioned his services and his intention to pay for them; and "said he regretted the act very much; that he was going to live a changed life, and be a different man." If my memory be correct, this evidence is uncontradicted and unimpeached. If it be true, which I do not doubt, the answers to the questions are not full, complete and true; and the contract sued on is void.

In *Providence Life Assurance Society* v. *Reutlinger*, 58 Ark. 528, a covenant was contained in the policy similar to that contained in the contract sued on in this case. Among the questions propounded to the insured was the following: "When and by what physician were you last attended, and for what complaint?" To which he replied: "Never called a doctor in his life." In speaking of this question the court said: "In the last-mentioned interrogatory two questions were combined in one. (1) He was asked, 'when and by what physician were

you last attended?'   (2)  If so, 'for what complaint?'   The object of asking 'for what complaint' was not to ascertain if he ever had any serious illness or personal injury.   He had already answered a question propounded for that purpose in the negative.   If such had been the object, it was wholly unnecessary to ask in connection with it, 'when and by what physician were you last attended?'   The question takes for granted that if he had been attended by a physician, it was in a case of sickness;' and the words, 'for what complaint,' were added to ascertain what the sickness was, without regard to its being serious or trivial, and to show what kind of attendance of a physician was referred to.   The obvious purpose of it was to ascertain the name of a person from whom information affecting the risk of insuring the life of Reutlinger could be derived.''

The first three questions in this case which I have set out in this opinion are about the same as the one in the Reutlinger case.   In this case the question was, ''how long since you were attended by a physician?''   In the Reutlinger case it was, when were you last attended by a physician?   The difference in these parts of the questions is: in the former the words, ''how long since,'' and in the latter, ''when,'' are used.   The information sought by each is the same.   By the remainder of the questions in the two cases the insurer seeks to find out the name of the physician, and the complaint or ailment for which he attended.   In this case, as in the Reutlinger case, the object of asking the question ''for what disease or ailment'' was not to ascertain if he ever had any serious illness or personal injury.   He had already answered a question propounded for that purpose in the negative.   If such had been the object, it was wholly unnecessary to ask in connection with it, ''how long since you were attended by a physician,'' and ''state name and address of such physician.''   The question takes for granted that if he had been attended by a physician, it was in a case of sickness; and the words ''for what disease or ailment'' were added to ascertain what the sickness was, without regard to its being serious or trivial, and to show what kind of attendance of a physician was referred to.   Why ask the insured to ''state name and address of such physician?''   Why was the address of the physician demanded? .  The obvious pur-

pose of the three questions, as of the one in the Reutlinger case, was to ascertain the name of a person from whom information affecting the risk of insuring the life of Farmer could be obtained. The answers of the insured do not give the information which the first and third questions were obviously intended to elicit, and are not "full, complete and true" as the assured warranted them to be; and the contract sued on, according to its own terms, is null and void.

I think that the judgment of the circuit court should be reversed.