---

CORBETT v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. INFANTS—ACTION BY GUARDIAN AD LITEM—ATTAINMENT OF MAJORITY.
    An action begun by a guardian ad litem, which is continued after the infant becomes of age, may, by suggestion entered on the record, be continued in the name of the infant.

2. LIFE INSURANCE—ACTION ON POLICY—QUESTION FOR JURY.
    Where, in an action on an insurance policy, the age of the insured, as given in his application, is put in issue, and the evidence is conflicting, it is proper to submit the question to the jury.

3. SAME—INSURABLE INTEREST.
    A granddaughter has an insurable interest in the life of her grandfather.

4. SAME—CHANGE OF NAME OF BENEFICIARY—EVIDENCE.
    There was evidence that, when an application was mailed to the insurance company, it contained the name of a beneficiary. The original application was produced, and showed that the name of such beneficiary had been changed "to his estate." The person who examined the application at the insurance office was not called to testify as to its condition when he examined it. Proofs of death were made out in the name of such beneficiary, and sent to the company, which retained them without objecting that the beneficiary was not the beneficiary in the application on

776     55 NEW YORK SUPPLEMENT    (Sup. Ct.

and 89 New York State Reporter.

file in its office. *Held* sufficient to sustain a finding that the alteration was made after it was mailed to the company.

**5. SAME—WARRANTY AS TO HEALTH—QUESTION FOR JURY.**

Where an insured states in his application that he had never been afflicted with ulcers or open sores, and the evidence tends to show such affliction, the question whether or not he had been so afflicted is for the jury.

**6. SAME—BURDEN OF PROOF.**

Where an insured in his application warrants his health as sound, the burden of showing the breach of such warranty is on the insurer.

Appeal from trial term.

Action by Ida J. Corbett against the Metropolitan Life Insurance Company. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

Frank S. Coburn, for appellant.

Frank C. Cushing, for respondent.

FOLLETT, J. This action was begun July 8, 1895, by the guardian ad litem of Ida J. Breese, now Ida J. Corbett, to recover on a policy of life insurance issued by the defendant January 15, 1894, by which it agreed to pay $500 upon the death of William Robertson, in case he died "more than one year after the date" of the policy. He died January 20, 1895. The name of the person to whom the sum should be payable is not mentioned in the policy, but the first condition indorsed thereon provides:

"The company may pay this policy to either the executor or administrator, husband or wife, or any relative by blood, or lawful beneficiary, of the insured, and the production by the company of the policy and a receipt in full, signed by either of them, shall be conclusive evidence that all claims upon said company under this policy have been fully satisfied."

The plaintiff, when the policy was issued, was 19 years of age, and was an infant when the action was begun; but she became 21 years of age in January, 1896, and is now a married woman. An action begun by a guardian ad litem, which is continued after the infant becomes of age, should, by a suggestion entered on the record, be continued in the name of the real party in interest. 2 Barb. Ch. Prac. (2d Ed.) 208; Mitf. Eq. Pl. (6th Am. Ed.) 124; 10 Enc. Pl. & Prac. 591, and cases cited; 1 Daniell, Ch. Pl. & Prac. (6th Am. Ed.) 78. No objection having been taken to the continuation of the action in the form in which brought, and the fact appearing upon the record that the plaintiff is of full age, the action may be continued in the name of Ida J. Corbett.

The premium on this policy was one dollar per week, which was paid by the plaintiff, who is a granddaughter of William Robertson, the insured. The policy was issued upon an application divided into four parts,—A, B, C, and D. Subdivisions A and C were signed by the insured. Subdivision B was signed by William H. Herrick, defendant's agent. Subdivision D was signed by Dr. John D. Tripp, defendant's medical examiner at Auburn. Subdivisions A and B were signed December 27, 1893, and the answers to the questions in those

subdivisions were written with a lead pencil by William H. Herrick. Subdivisions C and D were signed December 28, 1893, and the answers to the questions in those subdivisions were written in ink by Dr. John D. Tripp. The policy contains this stipulation:

"In consideration of the answers and statements contained in the printed and written application for this policy, all of which are hereby made warranties, and are hereby made part of this contract," etc.

Several defenses are set up in the answer, only five of which were litigated on the trial, and relied on as defenses to the action: First Defense. That the answers to the seventh and eighth questions in subdivision A of the application were untrue: "(7) When born? September, 1835. (8) Age next birthday? 59 years." These answers were written with a lead pencil by William H. Herrick, and signed by the insured, December 27, 1893. Second Defense. That the plaintiff is not the beneficiary under the policy. Paragraph 13 of subdivision A contains the following questions and answers: "(13) Name," etc., "of beneficiary, subject to provisions of policy applied for as to payment. Name? Ans. To his estate. Occupation? No answer. Relationship? No answer. Age? Ans. 19 yrs." Third Defense. That the answer to one of the questions of paragraph 8 of subdivision C was untrue: "(8) Has the life ever had any of the following complaints? Answer (Yes or No) opposite each. * * * Ulcer or open sores? No." This answer was written in ink by Dr. John D. Tripp, the defendant's medical examiner, and signed by the insured, December 28, 1893. Fourth Defense. That the answer to the ninth question in subdivision C was untrue. "(9) Is said life now in sound health? Yes." This answer was written in ink by Dr. John D. Tripp, the defendant's medical examiner, and signed by the insured, December 28, 1893. Fifth Defense. That the answers to questions 16 and 16a in subdivision C were untrue: "(16) When last sick? 1890. 16a. Of what disease? Muscular rheumatism." These answers were written in ink by Dr. John D. Tripp, the defendant's medical examiner, and signed by the insured, December 28, 1893.

The age of the insured at the time the policy was issued was a question sharply litigated on the trial. The insured was born in Scotland. When he emigrated to this country does not appear. William J. Robertson, a son of the insured, testified that his father had seven children; that James was the eldest; that the witness was the fifth, and Margaret A. Breese, the mother of the plaintiff, was the sixth child. He testified that he was born in October, 1854, and would be 44 years of age in October, 1898. The evidence, in a general way, was that the difference between the ages of the children was from 2 to 2½ years. Margaret A. Breese, if 2 years younger than William J., was born, if he stated his age correctly, in 1856, and was 42 years of age at the time of the trial. Margaret A. Breese testified that she came from Scotland when she was 13 years of age, and married 2 years afterwards. The whole family seems to have been illiterate. The insured was a "marksman,"—unable to write his name. Margaret A. Breese was unable to write her name or read writing, and read print with difficulty, and only in the Bible, which she never ventured to read aloud. She knew nothing about several of her

brothers and sisters,—whether they were living or dead. The family kept no record of births, marriages, and deaths. If the evidence of William J. Robertson was correct, the insured must have been older than stated in the application, because, if he was but 59 when the application was made, he became the father of James Robertson, his eldest child, at the age of 10 years, which is incredible. On the other hand, if the evidence of Margaret A. Breese is correct, the insured became the father of James at the age of 17 or 18 years, which is not incredible. William J. Robertson and his wife testified that the insured told them about 6 months before his death that he was 76 years of age. The plaintiff, Ida J. Corbett, and her mother testified that the insured frequently said that he was born October 15, 1835. In subdivision B of the application, signed by the defendant's agent, appears the following: "(5) Does the person appear older than age stated? No." In subdivision C the following appears: "(4) Age. Actual? 59. Apparent? 59." These answers were written by defendant's medical examiner. The medical examiner was the physician of the insured, and had known him for some time. Under this state of the evidence, the question of the age of the insured was one of fact, and properly submitted to the jury. No exceptions were taken to the instructions of the court in respect to this defense.

Was the plaintiff the beneficiary named in the application? The plaintiff testified that she was present when the application was signed, and that after the word "name," in the thirteenth question of subdivision A, appeared the words "Ida J. Breese." William H. Herrick, defendant's agent, who wrote the application, so testified. Dr. John D. Tripp, the defendant's medical examiner, testified that when he examined the insured the words "Ida J. Breese" were written in the place where the words "to his estate" now appear; and he also testified that after completing the application he mailed it directly to the home office of the defendant, in the city of New York. The original application was produced on the argument, and it is apparent, as was conceded, that the answer had been changed from "Ida J. Breese" to "To his estate." When it was changed, and by whom, was an important question. The defendant's agent testified that he did not make the change. On the contrary, the defendant's superintendent and assistant superintendent of the Auburn agency testified that, when the application was first brought to their attention by William H. Herrick, he was told that the defendant would not issue a policy payable to a granddaughter. Why it would not, does not appear, except that this witness stated that it was in violation of section 14 of the Superintendent's Manual, which is as follows:

"(14) A policy will not be issued in favor of a friend, nonrelative, or other person not having a lawful insurable interest in the life insured. This means that the beneficiary must be dependent upon the insured for support, or that the insured is indebted to the beneficiary in an amount sufficient to justify the sum insured, or that the beneficiary has some other substantial pecuniary interest in the life insured."

This rule does not prohibit the issuing of a policy, upon the application of the insured, payable to one who has not an insurable interest in the life insured. It simply prohibits the issuance of a policy, upon the application of and in favor of a person, upon a life in which

the applicant has no insurable interest. Under the law of this state a person may insure his life in favor of a person who could not on his own application procure an insurance on the same life. Again, a granddaughter has an insurable interest in the life of her grandfather. Loomis v. Insurance Co., 6 Gray, 396; Insurance Co. v. Schaefer, 94 U. S. 457; Warnock v. Davis, 104 U. S. 775; 1 Bacon, Ben. Soc. §§ 248, 250; Bid. Ins. §§ 187, 194. This case has been twice tried, and the issue how, when, and by whom the application was altered, was sharply contested on the first trial. Then, as now, the evidence was that, when the application was mailed to the defendant's home office, it contained the name of "Ida J. Breese." At the head of the original application appear the initials, in red ink, of the person who examined the application at the home office; and it should be remarked that, though this defendant had notice that it was asserted by the plaintiff that the alteration was made after the application reached the home office, the person who originally examined the application at the home office was not called to testify to its condition when examined by him. Again, Joseph Stackhouse was defendant's superintendent at Auburn when the policy was issued, and testified that he called the attention of Agent Herrick to section 14 of the Superintendent's Manual, and informed him that the company would not issue a policy payable to Ida J. Breese. The proofs of death were written by Stackhouse, and in those proofs Ida J. Breese is named as the beneficiary. It appears from those proofs signed by Stackhouse that he kept a register of the policies issued. These proofs were sent to the defendant about January 25, 1895, who retained them without raising any objection that Ida J. Breese was not the beneficiary in the application on file in its office. Under the state of the evidence, it is not strange that the jury found that the alteration in the application was made by some person after it was mailed by the medical examiner.

The contention that the plaintiff could not show that the defendant, or some person in its interest, fraudulently altered the application after it was received by the defendant, without pleading the alteration, was determined when this case was before this court on the first appeal. 24 App. Div. 377, 48 N. Y. Supp. 753. I think it was never before contended that in case a defendant produces on the trial, as a defense to an action, a paper executed by the plaintiff, which had been since its execution in the sole possession of the defendant, the plaintiff might not show a fraudulent alteration of the paper without pleading the alteration,—a fact which the plaintiff could not know until the paper was offered in evidence. Under such a rule a plaintiff could not show that a paper offered in evidence by a defendant had been altered by the defendant an hour before it was offered in evidence, without pleading the fact. There is no such rule.

Had the insured been afflicted with an ulcer or open sores? The insured lived in Auburn for many years prior to 1891, and in the spring of that year he and the family of Mrs. Breese removed to Geneva, where they remained until the spring or summer of 1893, when they returned to 118 South Division street, Auburn. While the insured was living at Geneva, in his daughter's family, it is contended that he was afflicted with an ulcer on his right leg, near the knee,

which Dr. Myron D. Blaine, a physician practicing at Geneva, testified
he treated; making 15 visits between October 21, 1891, and January
21, 1893. He testified that the sore yielded to treatment, and "be-
came apparently healed." Two witnesses who boarded in the family
of Mrs. Breese (Joseph M. and Betty I. Frame) testified that they saw
the sores, and saw Dr. Blaine treating them. Two other witnesses
testified that they heard the insured, while living in Geneva, complain
that his legs were sore. Mrs. Breese and the plaintiff testified that
Dr. Blaine was called to treat Mrs. Breese, and that on one occasion
Mrs. Breese asked the doctor to examine one of the legs of the in-
sured, and that the doctor pronounced it a case of eczema, and pre-
scribed an ointment, which was procured and applied by Mrs. Breese,
and that the trouble disappeared. She also testified that the doctor
examined the leg on only two occasions, and that the insured was in
good health while living in Geneva; was not sick a day, but was
around and did light work as usual. The account of Dr. Blaine, enti-
tled "Account of Breese," was offered in evidence, on which 17 visits
were charged for,—one marked, "Girl," and another, "Mrs."; other-
wise, the account does not show the name of the patient attended.
The doctor testified that he discovered some difficulty with the heart
of the insured. Dr. John D. Tripp, who had been the physician of
the insured for some years, testified that he examined him, and dis-
covered no difficulty with his heart. Under this state of the evidence,
the question whether the insured had been afflicted with an ulcer or
with open sores was a question for the jury. It is not asserted by the
appellant that the court erred in its charge bearing upon this question.

Was the insured in sound health when the application was made?
Upon this issue, Dr. John D. Tripp, the defendant's medical exam-
iner, testified that he examined the insured, described the examina-
tion which he made, and stated that he "found no unsoundness about
the man, whatever." Mrs. Breese, the plaintiff, and some others, tes-
tified that the insured was in good health at this time. The defend-
ant offered no evidence to the contrary. A temporary ailment, from
which a person recovers, cannot be considered a disease, within the
meaning of a life insurance policy. Cushman v. Insurance Co., 70
N. Y. 72. The appellant urges that the court erred in its instruction
that the burden was on the defendant to show affirmatively that the
insured was not in sound health when the policy was issued. As
before stated, the defendant gave no evidence as to the insured's con-
dition of health at the date of the application, except as it may be in-
ferred from the evidence of Dr. Blaine, who testified that the insured
recovered under his treatment. The burden of showing a breach of
this warranty was upon the defendant. Jones v. Insurance Co., 61
N. Y. 79; Murrey v. Insurance Co., 85 N. Y. 236; Insurance Co. v.
Ewing, 92 U. S. 377; 2 Bacon, Ben. Soc. § 469, and cases cited.
The preponderance of evidence was to the effect that the insured was
in sound health, for a man of his years, when the application was
signed. A man of 59 years of age is seldom in as sound health as
at the age of 40 or under. The insured stated in the application that
he was last sick in 1890, and that his trouble was muscular rheuma-
tism. The only evidence of any sickness of the insured before or after

that date was give by Dr. Blaine, and the other witnesses who testified in respect to the condition of his leg when he lived at Geneva. As before stated, the evidence as to whether he was sick at that time is conflicting. However, whether he was last sick in 1890 was a question not submitted to the jury by the court, and the defendant made no request that it be submitted. The appellant does not now argue that any error was committed in the reception or exclusion of evidence.

All of the alleged errors argued by the appellant in the brief, or orally at the bar of this court, have been considered; and we find none calling for a reversal of the judgment, which, with the order denying a motion for a new trial, should be affirmed, with costs. All concur, except WARD, J., not voting.