## NATIONAL COUNCIL KNIGHTS AND LADIES OF SECURITY v. OWEN.

No. 8071—Opinion Filed Nov. 14, 1916.

(161 Pac. 178.)

1. **Insurance — Contract — Application — Health of Insured.**

The fact that an applicant for life insurance is temporarily indisposed at the time of making the application will not avoid the policy, if the illness is not of a character to permanently affect his health, or render him more susceptible to the attack of disease, although he represents in the application that he is in good health at the time.

2. **Insurance—Fraternal Benefit Insurance—Actions—Questions for Jury.**

The truth or falsity of warranties in an application for insurance, where there is a conflict in the evidence, is a question of fact for the jury.

3. **Same—Application—"Disease."**

Where, by the terms of a policy of life insurance, the answers to the questions by the applicant are made warranties, and the applicant answers "no" to certain questions relative to "disease" of specific bodily organs, held, that the term "disease," within the intention of the parties to the contract, does not include slight or temporary ailments of such organs, and that, the testimony being in conflict as to the breach of such warranties, a question is presented for the determination of the jury.

.(Syllabus by Galbraith, C.)

Error from District Court, Grady County; Will Linn, Judge.

Action by Lula Owen against the National Council Knights and Ladies of Security. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 47 Okla. 464, 149 Pac. 231.

S. C. Durbin, for plaintiff in error.

Riddle & Hammerly, for defendant in error.

Opinion by GALBRAITH, C. The defendant in error, Lula Owen, sued the plaintiff in error, the National Council Knights and Ladies of Security, on a benefit certificate issued to her late husband, Edward G. Owen, during his lifetime and payable to her at his death. It was alleged in the petition that this certificate, for a valuable consideration, had been issued on October 13, 1910, in the sum of $3,000, payable to the plaintiff as surviving widow, in the event of the death of the insured, and that Edward G. Owen died on the 16th day of November, 1910, and that the policy provided that if the death of the assured occurred within six months of the date of issuance of certificate then the same might be discharged on the payment of 60 per cent. of the face thereof, and that the plaintiff had complied with all the conditions of the policy to be kept and performed by the beneficiary, and that the same was in full force and effect on the date of the death of the assured, and that demand for payment had been made, and that $1,800 was due thereon; that no part of the same had

been paid. The action was commenced on the 27th day of April, 1911. The society denied liability on the ground that the assured had made false statements in his application for the certificate, and that such statements being false, under the terms of the contract, rendered the certificate void. There was a trial to the court and jury, and a judgment rendered in favor of the plaintiff, which, on appeal to this court, was reversed for errors at the trial. See National Council Knights and Ladies of Security v. Owen, 47 Okla. 464, 149 Pac. 231. On the second trial the plaintiff again recovered judgment, and the cause is here again for review.

The answer of the society raised but one defense; that is, the breach of warranties made by the assured in his application for the certificate. It is contended that in the application for the certificate the following questions were asked and answers given:

"Have you or have you ever had any of the following diseases or symptoms or any disease of the following named organs?" To which the applicant answered "No" as follows:

"Kidneys, disease of"—"No."

"Liver, disease of"—"No."

"Loss of consciousness"—"No."

And further:

"Is there anything to your knowledge or belief in your physical condition, family history or habits tending to shorten your life, which is not distinctly set forth above?" To which the applicant answered, "No."

And also:

"Have you had any illness, constitutional disease or injury during the past five years requiring the services of a physician or surgeon?" To which the applicant answered, "No."

And it is alleged that each of the answers made by the applicant to the questions was false, and that:

"The said Edward G. Owen has been treated for disease of the kidneys within a few days prior to the signing of said application, and had been treated for loss of consciousness, and had been unconscious for a period of two or more days within three weeks before the date of making the application, and had been informed by his family physician that his physical condition was such as to end his life within three or six months. By reason of such representations and false statements and answers, and breach of such warranties, said certificate was of no effect and void."

A reply was filed denying that any false answers were made to the questions, and alleging that there had been no breach of the warranties in the contract of insurance. It seems that the argument of the plaintiff in error on this branch of the case is fully answered by the court in Continental Casualty Co. v. Owen, 38 Okla. 107, 131 Pac. 1084, which was an action by the defendant in error on an accident policy issued and delivered to the said Edward G. Owen, wherein the court says, in the first paragraph of the syllabus, as follows:

"In an action on an accident insurance policy, there was a sharp conflict in the evidence as to whether the insured was suffering from acute or chronic nephritis about 30 days prior to the issuance of the policy. A physician who was called into the case at that time, and who attended the insured until a few days prior to his death from an accidental gunshot wound inflicted about 30 days after the issuance of the policy, testified that he found the insured suffering from an acute attack of nephritis; that he responded readily to treatment for that disease, and within a few days commenced to show marked improvement; that within two or three weeks he was practically restored to health; that 'his color was as good and he was as healthy looking as anybody during the latter part of the time I was treating him;' and that an examination of the urine and the symptoms indicated that his recovery was complete. Held, that whether the insured was suffering from a 'defect in the body,' within the meaning of that phrase in a statement of the insured indorsed on the policy to the effect that he had no 'defect in body,' was a question for the jury."

In the case at bar there was likewise a sharp conflict in the testimony as to the physical condition of the applicant at the time of making the application for the certificate, and a few weeks prior thereto. According to some of the physicians testifying, he was stricken with a fatal disease of the kidneys and liver, and could only possibly live a very few months at the best. While the testimony of other physicians, especially that of the examining physicians for the society, was to the effect that the trouble was a temporary ailment which yielded readily to treatment, and that the assured was in ordinary health at the time the application was signed, and that he, as examining physician for the society, after a thorough examination of the applicant, recommended the issuing of the certificate, and that the assured did not die of a disease but on account of a gunshot wound. In this state of the evidence, the question of the falsity of the answers returned to the questions was peculiarly one for the jury.

Again, complaint is made of two instructions of the court to the jury, one being instruction No. 5, wherein the court presents to the jury the theory of the plaintiff, and the burden of this complaint being that it

does not also state the theory of the defendant. Inasmuch as this instruction is followed by Nos. 6 and 7, in which the theory of the defendant is fully set out to the jury, it seems that this objection is not well taken. As was said by this court in Grant v. Milam, 20 Okla. 672, 95 Pac. 424:

"It is not required that the entire law of the case shall be stated in a single instruction, and it is therefore not improper to state the law as applicable to particular questions or particular parts of the case in separate instructions, and if there is no conflict in the law as stated in different instructions, and all the instructions considered as a series present the law applicable to the case fully and accurately, it is sufficient."

See, also, G., C. & S. F. R. Co. v. Taylor, 37 Okla. 99, 130 Pac. 574; First National Bank v. Ingle, 37 Okla. 276, 132 Pac. 895; and Chickasha Street R. Co. v. Marshall, 43 Okla. 193, 141 Pac. 1172.

Again, complaint is made of instruction No. 8, which reads as follows:

"You are instructed, gentlemen of the jury, that to constitute a disease, under the terms of the application as used, would not include merely a temporary ailment which would not affect the general health."

The third paragraph of the syllabus of Mutual Life Ins. Co. v. Morgan, 39 Okla. 205, 135 Pac. 279, seems to support the law as announced in this instruction as follows:

"The fact that an applicant for life insurance is temporarily indisposed at the time of making the application will not avoid the policy, if the illness is not of a character to permanently affect his health, or render him more susceptible to the attack of disease, although he represents in the application that he is in good health at the time."

In Des Moines Life Ins. Co. v. Clay, 89 Ark. 230, 116 S. W. 232, the Supreme Court of Arkansas say:

"The court instructed the jury that the question quoted above had reference to only such diseases as affect the general health and are serious in their nature, and not to temporary or trivial ailments. That instruction was correct and declared the law in accordance with the decisions of this court. Assurance Society v. Reutlinger, 58 Ark. 528, 25 S. W. 835; Mutual Reserve Fund v. Farmer, 65 Ark. 581, 47 S. W. 850; Franklin Life Ins. Co. v. Gallighan, 71 Ark. 295, 73 S. W. 102, 100 Am. St. Rep. 73. The evidence was sufficient to justify a finding by the jury that there was no breach of warranty and that appellant is liable on the policy."

In Corbett v. Met. Life, 37 App. Div. 152, 55 N. Y. Supp. 775, it is said:

"A temporary ailment, from which a person recovers, cannot be considered a disease, within the meaning of a life insurance policy."

In Manufacturers' Accident Co. v. Dorgan, 58 Fed. 945, 7 C. C. A. 581, Judge Taft, speaking for the Circuit Court of Appeals, said on this question:

"The court told the jury that, in determining the question whether the insured was or was not afflicted with any disease or bodily or mental infirmity, they were to inquire whether he had some specific ailment; that it would not come within the scope of this warranty that he might, like other men or the generalty of men, have been subject to occasional attacks of the kinds that are specified, 'but there must have been some specific determination towards such condition of the body, or some part of it, as would amount to a disease or a bodily infirmity.'

"It seems to us that the court accurately stated the legal effect of the contract contained in the application and the policy. An anaemic murmur, it was admitted, indicated no structural defect of the heart, but arose simply from mere temporary debility or weakened condition of the body. We do not think that this comes within the definition of 'bodily or mental infirmity,' as the term is used in the application. The statement in the application by the insured did not, either in his contemplation or that of the company, refer to any mere temporary ailment or indisposition which did not tend to weaken and undermine the constitution at the time of taking membership. Pudritzky v. Supreme Lodge, 76 Mich. 428, 43 N. W. 373; Brown v. Insurance Co., 65 Mich. 306, 32 N. W. 610 (8 Am. St. Rep. 894); Insurance Co. v. Daviess' Ex'x, 87 Ky. 541, 9 S. W. 812; Life Ins. Co. v. Francisco, 17 Wall. 672 (21 L. Ed. 698)."

And again in the course of the opinion it is said:

"We are therefore finally brought to the question what the words 'disease and bodily infirmity' include. We think the charge of the court below upon this point must be sustained. In a broad, generic sense, any temporary trouble by reason of which a man loses consciousness is a disease. It is a condition of the body not normal, and produced by the imperfect working of some function, but as the imperfect working is not permanent, and the body returns at once, or in a short period of time, to its normal condition, it does not rise to the dignity of a disease. A fainting spell produced by indigestion or a lack of proper food for a number of hours, or from any other cause which would not indicate any disease in the body, but would show a mere temporary disturbance or enfeeblement, would not come within the meaning of the words 'disease and bodily infirmity,' as used in this policy.

"It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company, strongly against the company. Policies are

drawn by the legal advisers of the company, who study with care the decisions of the courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer."

In Sovereign Camp of Woodmen of the World v. Jackson, 57 Okla. 318, 157 Pac. 92, it is said:

"The words 'in good health' do not imply physicial perfection and freedom from all the ailments that flesh is heir to. To be not in good health within the meaning of the policy must be such physical condition as to materially affect the risk, or such that, if the company had known the condition of the insured, it would not have delivered the policy. The fact that a man has the incipient elements of disease (the seeds of death) in him, which may or may not shortly spring up into fatal disease, does not mean that he does not fulfill the meaning of the term 'in good health.' To be in 'good health' is a comparative term, and a man with a slight cold, such as to cause no apprehension of anything serious, can accept a policy of insurance 'in good health' without being considered to have prepetrated any fraud upon the company or to have rendered his insurance contract void by reason of a violation of its terms."

The foregoing authorities sustain the contention that this instruction is a fair statement of the law applicable to the question under consideration. We do not think that a temporary ailment of the kidneys or other bodily organs can be considered a disease within the contemplation of the parties to the contract and within the terms as used in the application. The disease herein referred to is evidently some affliction of a serious, permanent nature, and does not include a slight or temporary affliction. At least, there was ample evidence in the record to take this question to the jury. The jury by its verdict found that the affliction was of a temporary and not a permanent nature, and that therefore there was no breach of the warranties as contended by the plaintiff in error.

Upon the whole record, it seems that a fair trial was had in this case and a just verdict returned. There is, however, one slight error in instruction No. 5, and in the judgment, in this, that the court instructed the jury that if they found for the plaintiff below they should calculate interest from February 1, 1911, and the judgment rendered on the verdict was accordingly entered. There was nothing in the record to justify such direction, although in the petition interest was prayed for from February 1, 1911, but under the terms of the certificate the claim did not mature until proof of death had been furnished. Section 5 of the benefit certificate reads as follows:

"No action in any court can or shall be maintained on this certificate until after the proof of death, and claimant's right to benefits, as provided in the laws of the order, have been filed with the National Secretary and passed upon by the National Executive Committee, nor unless brought within one year from the date of death of the member."

The action was commenced within one year after the death of the member, but there is no testimony in the record as to when the proofs of the death were furnished.

"Interest is the compensation allowed for the use or forbearance or detention of money, or its equivalent." Section 1002, Rev. Laws 1910.

Until the claim matured on this certificate, no interest could be calculated thereon; that is, prior to that time there could be no "forbearance or detention of money." There is no testimony in the record to show that the claim matured or became due and payable on or before February 1, 1911. It may be presumed that the proofs of death were furnished before suit was filed. Since the furnishing of such proof was a condition precedent to the maintenance of the suit, it may be that interest should be calculated on the claim from the date of the filing of suit, and not from the date judgment was rendered. In any event, there is nothing in the record to justify the instruction that interest should be calculated from February 1, 1911.

The defendant in error should therefore be required to file a remittitur of all interest included in the judgment prior to April 27, 1911, the date of filing the suit, and evidence the same by the certificate of the clerk of the trial court, and, on presenting such evidence to this court, the judgment appealed from should be affirmed.

By the Court: It is so ordered.