126    161
s85ℕW 472
131   ²617
126    161
134   ³218

## TOBIN *v.* MODERN WOODMEN OF AMERICA.

1. LIFE INSURANCE—CAUSE OF DEATH—CANCER—DEVELOPMENT OF DISEASE—QUESTION FOR JURY.

Where physicians testified, in an action on an insurance certificate, that it was possible that a cancer, which caused the death of the insured 10 days after he received his certificate, might have originated and developed within so short a period of time, but that it was extremely improbable that such was the fact, and that no similar case had come within the range of their personal knowledge, it was proper for the court to submit the question as one of fact to the jury.

2. APPEAL—DENIAL OF NEW TRIAL—REVIEW.

An order denying a motion for new trial is not reviewable on

126 MICH.—11.

error where the record does not show the reasons for the denial, or that any exception was taken to the ruling.

3. Life Insurance — Conditions — Good Health — Temporary Indisposition.

A condition of an insurance certificate that insured should be in good health at the time of receiving his certificate would not be violated because of some slight ·indisposition, as headache or colic, only temporary in its effect.

4. Same—Breach of Warranty.

Where an insurance certificate makes the truth of the insured's statement in his application, that he is at the time in good health, essential to the validity of the certificate, it would be error to permit the jury to excuse a breach of such warranty on the theory that the false statement was such as to work no prejudice to the insurer.

5. Trial—Instructions—Harmless Error.

An instruction containing language which is erroneous in the abstract does not require a reversal where the context renders it harmless, and it is apparent that the jury considered it in its proper connection.

Error to Saginaw; Wilber, J. Submitted February 1, 1901. Decided March 26, 1901.

*Assumpsit* by Helen Tobin against the Modern Woodmen of America on a benefit certificate. From a judgment for plaintiff, defendant brings error. Affirmed.

*J. W. White* and *Emory Townsend*, for appellant.

*Ferdinand Brucker* and *Fred H. Allen*, for appellee.

Hooker, J. The defendant is a fraternal society, and the action one brought against it by a beneficiary named in one of its certificates issued to her late husband. Upon the certificate was the following:

"1. That the application for membership in this society made by the said member, a copy of which is hereto attached and made part hereof, together with the report of the medical examiner, which is on file in the office of the head clerk, and is hereby referred to and made part of this contract, is true in all respects, and that the literal

truth of such application, and each and every part thereof, shall be held to be a strict warranty, and to form the only basis of the liability of this society to such member and to his beneficiary or beneficiaries, the same as if fully set forth in this benefit certificate.

"2. That, if said application shall not be literally true in each and every part thereof, then this benefit certificate shall, as to the said member, his beneficiary or beneficiaries, be absolutely null and void.

"3. This certificate is issued in consideration of the warranties and agreements made by the person named in this certificate in his application to become a member of this society, and also in consideration of the payment made when adopted as a Neighbor in prescribed form, and his agreement to pay all assessments and dues that may be levied during the time he shall remain a member of this society."

The application for membership referred to in the declaration was in writing, duly executed by Michael Tobin, and delivered by him to defendant as a consideration for and the basis of the benefit certificate sued on in this case, a substantial copy of which application was attached to the declaration. It appeared that by the terms of the said application, and of the benefit certificate sued on, each is made a part of the contract applied for; that, by the terms of the contract, the statements and answers contained in the application were warranted to be strictly and literally true; and that it was further agreed by the terms of the contract that, if any answer or statement made in said application should not be literally true, any benefit certificate issued on the application should be void; that, by the terms of the contract, there should be no liability on the part of the defendant by reason of said contract unless said Michael Tobin should be in sound health at the time he should receive the benefit certificate.

Among the questions asked of Michael Tobin in said application was the following: "Are you now of sound body and mind, in good health, and free from disease or injury?" to which question he answered, "Yes." "Have you ever had any serious illness, local disease,

or personal injury?" The answer of the said Michael
Tobin thereto was "No." "Have you, within the last
seven years, consulted any physician in regard to personal
ailments?" His answer thereto was "No."

The evidence disclosed that the application was executed
on the 4th day of April, 1898, and the applicant was
initiated and received his certificate on May 23, 1898.  On
the 27th day of the same month he was seriously sick
from a cancer.  It is claimed that the testimony conclu-
sively shows that he was not free from disease, but had
the cancer, at the time he was initiated, and that the cer-
tificate was thereby invalidated; and error is assigned
upon a refusal to direct a verdict for the defendant.

The court instructed the jury that if, either at the time
he made his application or when he received his certifi-
cate, he was not in good health, but was suffering from
disease, then, according to the contract that he made with
the society, his wife could not recover.  If the testimony
could be said to conclusively show that the deceased had
this cancer at the time of his initiation, the court should
not have permitted the jury to find the contrary.  Most of
the testimony tended to show that the cause originated
before the deceased was admitted to the order.  The gist
of the testimony of the two witnesses supposed to show
otherwise is that, while it is possible that such a tumor
might develop after May 23d, and end in death under cir-
cumstances such as these on June 2d, it was so improb-
able that neither had ever seen or heard of such a case.
Neither of them gave his opinion that it was probable that
this cancer originated after May 23d.  The most that
Leach said was that, judging from the rapidity of the
growth of this cancer, he should say it *could* have formed
and grown after the 23d of May.  Duncan said that, tak-
ing Dr. Leach's testimony as true, it would be a very
rapid growth, but, from the way it did grow, a person
would conclude that it *might* be so.

While courts should not hesitate to take from juries
matters of fact which are clearly not in dispute, they are

and should be careful not to invade the province of the jury. We see many cases where the preponderance of evidence is clearly against the verdicts rendered, and we consider this to be palpably so; but we cannot say that the court erred in not taking upon himself the function of the jury, and weighing the evidence, though it was within his province to set aside a verdict clearly wrong. This society is an aggregation of individuals, not for the purpose of making money out of an insurance or other business, but to obtain mutual protection for their families against the want that sometimes follows the death of the husband and father. It was agreed that sick men should not be eligible, and there was no concealment of the fact. The prohibition was not confined to those who should believe themselves sick, but to those who should be sick as a matter of fact, when initiated, whether known or not. This was a contract they had a right to make, and to have enforced. It is not the province of juries to bestow charity at others' expense, and, where it clearly appears that they attempt it, the trial court should frustrate the attempt by setting aside the verdict. In this case a motion for new trial was denied; but, as the record does not show the reasons for such denial, nor that any exception was taken, we cannot review the court's action in that matter. *McRae* v. *Garth Lumber Co.*, 102 Mich. 488 (60 N. W. 967); *Finley* v. *Widner*, 116 Mich. 679 (75 N. W. 132); *In re Gallagher's Estate*, 120 Mich. 365 (79 N. W. 570); *Brennan* v. *O'Brien*, 121 Mich. 491 (80 N. W. 249).

There was testimony tending to show that upon the evening of his initiation the deceased was not in good health. It was shown, and not disputed, that some members were standing with him on the sidewalk in front of the hall, and one asked him how he felt, and he said, "Pretty sick." He started upstairs, and, after going five or six steps, he rested on the railing of the stairway. After waiting a minute or two, one walked up to him, and said, "You got a pretty hard way of getting up;" and he said, "Yes, sir." The member said, "I will help you

up," and he said, "All right;" and he helped him up. The witness stated that he helped him up because he was sick, and that he said he was very weak, and not strong enough to climb the stairs. The witness helped him up the second flight. He did not stay until the camp closed, but asked to be excused because not feeling well. He stayed but about five minutes after being obligated. There was also testimony that he said the reason he was not initiated at the previous meeting was because he was sick. The meetings were held twice a month. This testimony, which was uncontradicted, has a strong tendency to show that he was not in good health; but we cannot say that the court erred in leaving the question to the jury.

Defendant's second request was as follows:

"If you believe from the evidence in this case that on the evening of May 23, 1898, when Michael Tobin secured the benefit certificate sued on in this case, he was not in good health, then your verdict should be for the defendant, as the plaintiff would not be entitled to recover if said Tobin was not in good health when he received said certificate."

The court said:

"I give you this charge as requested, but with the same qualification I have just given you in regard to the other,—that some slight indisposition that would be only temporary in its effects, and that would not prejudice the rights of the defendant in any way, would not be such a statement as would forfeit her right to recover; but, if it was the other, then it would."

He had previously been asked to charge as follows:

"You are instructed that the rights of the plaintiff in this case are subordinated to, defined and controlled by, the contract made by her husband; that if he made an untrue statement in his application concerning his health, or if the certificate sued on was delivered to him when he was not in good health, the plaintiff has no right to recover, as a recovery under such circumstances would be in violation of the terms of the contract, which provides that if any of his statements made in the application were

untrue, or that if he was not in good health when he received his certificate, it would be void and of no effect."

The court gave the same with the following modification :

" I have substantially told you the same thing, and I so charge you in the language of the request. But let me say to you that an untrue statement which would defeat a recovery must be such a statement as would be likely to work an injury or a prejudice to the rights of the defendant. Some slight indisposition, that could be only temporary in its effects, would not prevent a recovery. The defendant in that case would not be damaged or injured by it."

As to the second, we may say that we can hardly consider a temporary headache or colic as justifying a forfeiture upon the ground that the person was not in good health within the meaning of this policy. We are satisfied that this applicant was not in good health when he received his certificate; but the question was submitted to the jury, and the verdict is conclusive. It was not competent, however, to make the question depend upon whether it prejudiced the defendant. Being coupled with what preceded it, perhaps it should not be so understood, however.

But, as regards the first request, his instruction was erroneous. It was not for the court to permit the jury to excuse a breach of warranty upon the ground that the statement, though false, was not material. The parties had made the statements warranties. They had seen fit to contract that all statements should be material, and what the effect of a false statement should be. The court set this aside, and substituted another provision in its place. As said in the case of *Modern Woodmen of America* v. *Von Wald*, 6 Kan. App. 231 (49 Pac. 782), it was provided by the contract that "the certificate should be void in case of the untruthfulness of any of the answers, and neither the court nor the jury are at liberty to inquire into the materiality of the questions and

answers, and, unless they are true, the beneficiary cannot recover." See, also, *Northwestern Benevolent & Aid Ass'n* v. *Hall*, 118 Ill. 169 (8 N. E. 764); *Ketcham* v. *Accident Ass'n*, 117 Mich. 521 (76 N. W. 5); *Continental Life Ins. Co.* v. *Rogers*, 119 Ill. 474 (10 N. E. 242, 59 Am. Rep. 810); *Finch* v. *Modern Woodmen of America*, 113 Mich. 646 (71 N. W. 1104).

In *Ætna Life Ins. Co.* v. *France*, 91 U. S. 510, it was said:

"We decided in the case of *Jeffries* v. *Insurance Co.*, 22 Wall. 47, that the question of the materiality of the answer did not arise; that the parties had determined and agreed that it was material; that their agreement was conclusive on that point; and that the only questions for the jury were: *First*, Was the representation made? *Second*, Was it false?"

But this general language, though erroneous in the abstract, should not be treated as a ground for reversal, for the reason that the only misrepresentation complained of was that he said that "he had no disease, and was in good health;" and we should treat this discussion as directed to that question, and the instruction under consideration limited by its concluding sentences. The only question in dispute was whether deceased had this cancer on April 4th; and the jury must have found that he had not, as all the testimony showed that the cancer was a fatal malady, and there is nothing to indicate that the jury could have considered it a mere temporary ailment, or that they took any other view of it. Our attention is not called to any testimony tending to show that he had any other disease at the time the application was made. There was no chance for a misapprehension upon the part of the jury.

The judgment is affirmed.

MOORE, LONG, and GRANT, JJ., concurred with HOOKER, J. MONTGOMERY, C. J., concurred in the result.