## Sarah N. Johnson, Defendant in Error, v. Modern Woodmen of America, Plaintiff in Error.

### Gen. No. 15,293.

1. FRATERNAL BENEFIT SOCIETIES—*what "good health" sufficient to sustain reinstatement.* If a person enjoys such health and strength as to justify a reasonable belief, on the part of himself and others, that he is free from serious organic trouble, or from symptoms calculated to cause a reasonable apprehension of such derangement, and if to ordinary observers and outward appearance his health is reasonably such that he might, with ordinary safety, be insured, and upon ordinary terms, the requirement of "good health" is satisfied.

2. FRATERNAL BENEFIT SOCIETIES—*when forfeiture will not be enforced.* If the reinstatement was allowed by the society without fraud or concealment practiced upon it, without medical examination made by it, such society will not, after continuing to receive assessments and not moving in the lifetime of the insured to set aside the reinstatement, be allowed to enforce a forfeiture after death as against the beneficiary.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed March 3, 1911.

**Statement by the Court.** Defendant in error brought her action in the Municipal Court to recover $1,000 from the plaintiff in error upon an insurance policy issued by it upon the life of the deceased, a son of the defendant in error. A jury trial was had, resulting in a verdict and judgment for the plaintiff, which the defendant seeks to reverse on a writ of error.

Plaintiff in error is a fraternal beneficiary society, incorporated under the laws of the State of Illinois. Its benefit fund is made up of assessments upon its members, each being payable on or before the last day of the month following its levy. In case of non-payment during such month, the member is suspended,

and the benefit certificate is null and void and so continues until reinstatement in conformity with the by-laws of the order.

Deceased failed to pay his assessment during April, 1907, and, therefore, became suspended on May 1st for such non-payment, but on June 14, 1907, he did pay his assessment to the Clerk of the local Camp of Modern Woodmen at Detroit, Michigan, where he was then living.

The by-laws of the organization provide for the reinstatement of a member within sixty days from date of suspension, upon payment of all arrearages, *provided* that the member be in ''good health'' at the time of such reinstatement; and the by-laws further provide that the receipt and retention of such assessments, in case a suspended member is not in good health, shall not have the effect of reinstating him, or entitling him or his beneficiary to any rights under the benefit certificate.

As a defense to the action plaintiff in error insists that deceased was *not* in ''good health'' at the time the assessment was paid; while defendant in error on the trial contended, not only that deceased was in such good health as is contemplated by the by-laws, but that even if he *were* not, this defense was waived by the act of the Clerk of the local Camp at Detroit, in receiving the assessment from deceased with knowledge of his condition at the time.

While living in Detroit the deceased had been working in a window shade factory, with some irregularity, for several months, and until the latter part of May, 1907, when he quit work, partly because of his physical condition, which he attributed to ''rheumatics.'' He came to Chicago on the 7th of July, where, about a month later, he was examined by a Doctor Hendricks, to whom he stated that early in the year of 1907 he had fallen from a scaffold, or something of the sort, and hurt his hip. At this examination Dr. Hendricks

found that his then suffering was due to sarcoma, or tumor, of the left leg or hip, and deceased was taken to a hospital in Chicago on the 8th or 9th of August, where he died on the 12th of September, 1907.

During the trial, the court admitted in evidence, over objection of the plaintiff, a so-called hospital sheet, purporting to be a clinical hospital record from St. Elizabeth's Hospital, Chicago, which gives certain alleged data about the deceased, and under the heading "Present Complaint" the record says, referring to the deceased, "About four months ago patient noticed pain in his left hip, extending to the knee," etc.

TRUMAN PLANTZ, ARTHUR W. FULTON and GEORGE G. PERRIN, for plaintiff in error.

DARROW, MASTERS & WILSON, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Defendant in error made out a *prima facie* case, and it devolved upon plaintiff in error affirmatively to establish its defense, that deceased was not in "good health" when he was reinstated on the 14th of June, 1907.

The evidence offered to establish this defense consists largely of the testimony of employers and fellow workmen, and a brother of the deceased, all to the general effect that at different times, during the early months in 1907, deceased was crippled up and unable to work,—sometimes he was lame, and seemed to be in poor physical condition; that he complained of "rheumatics;" that, when he came to Chicago, July 7, 1907, he was not strong or able to work, but limped in his walk, and that really he came on account of his sickness, and being unable to work; that when examined in Chicago, with reference to admission to the hospital, about August 7th, he was found to have a badly swollen leg, which developed into sarcoma or

tumor of the hip, from which he died on September 14, 1907.

Dr. Hendricks, who made the examination, testified that deceased told him, at the time of this examination, that he had fallen from a scaffold, or something of the kind, early in the year 1907, and had hurt his hip. The so-called hospital sheet was introduced in evidence over the objection of the plaintiff, which we think was not sufficiently proven to authorize its admission in evidence; yet, for the time being, considering it as properly received, we find that it contained a statement to the effect that, "about four months ago patient noticed pain in left hip extending to knee. Couldn't walk without limping. Lost about fifteen pounds. Appetite and strength pretty good at first, later appetite and strength were lost. Leg began to swell, two or three times size of right leg."

The testimony on behalf of the plaintiff tended to show that deceased had been able to do his work in a fairly satisfactory manner, and did work up *until* the last of May, 1907; that from that time until he went into the hospital in Chicago there was no direct evidence about his health, except that he seemed to be about normal, and in Chicago went about apparently in usual health, except that he limped.

Whether or not the deceased was in good health at the time he was reinstated, was a question of fact for the jury. The evidence shows that the deceased died from an enormous tumor on his left hip, and we think the evidence justifies the belief that probably this tumor was caused by some accidental fall months before, and that, at the times he was indisposed, and when he thought himself afflicted with "rheumatics," he was really suffering from the early stages of this disorder, from which he died. We think the evidence fairly shows that neither he nor his employers, nor his fellow employes, regarded his condition as serious; nor did any of them, at the time, think of his ailments as being more than incidental and ordinary.

It is evident that toward the end of his life the disease developed rapidly, because Dr. Porter, who was a witness, and who examined and treated the deceased in the hospital, testified, that it would be impossible for him to tell whether or not deceased was in good health on June 14th,—the date of his reinstatement. Speaking of the condition of deceased, Dr. Porter said, "Why, judging from what we found when we took charge of him, and the progress of the case made after we had it, it was a rapidly growing tumor.    Within two weeks we could notice considerable enlargement." This expert testimony, given on behalf of the defendant, the jury may well have regarded as significant, and as tending to confirm the belief that in the months of May and June there was probably no such indication of serious trouble as would alarm deceased or his friends, or suggest to them the necessity of a careful investigation into his condition.

We think the testimony, fairly considered, shows that while at the time of Johnson's reinstatement his affliction was probably present in his system and gathering strength and virulence as it progressed, it was not then of such character as seriously to affect his physical condition, nor was it then thought by him or those who knew him, that his general health was seriously impaired.

The record contains no evidence that there was any fraud or concealment practiced or intended by him in securing his reinstatement.

Under the law announced by our Supreme Court in Court of Honor v. Dinger, 221 Ill. 176, and by the Appellate Court in the same case, 123 Ill. App. 406, as applied to the facts in that case, and our own judgment as to a proper construction of the words "good health," as here used, we think the jury were justified, under the evidence in this case, in finding that the defendant had failed to show that the deceased was not, when reinstated, in "good health," within the meaning of these words as used in the by-laws.

The law does not require that in order to be in "good health," Johnson, when reinstated, should have been in perfect health. It has repeatedly been held that the term "good health," in referring to life insurance, and representing that the insured is in good health, is a comparative expression, and does not mean absolute perfection. If the person enjoys such health and strength as to justify a reasonable belief, on the part of himself and others, that he is free from serious organic trouble, or from symptoms calculated to cause a reasonable apprehension of such derangement, and if to ordinary observers and outward appearance his health is reasonably such that he might, with ordinary safety, be insured, and upon ordinary terms, the requirement of "good health" is satisfied. See Court of Honor v. Dinger, *supra*.

There is another consideration. Even if there were doubts as to whether deceased was in "good health" at the time of his reinstatement, we should still feel that, under the facts in this case, no fraud in securing reinstatement having been shown, that it would be inequitable to allow defendant to escape liability upon this ground. Johnson was reinstated without medical examination,—that being the regular and only manner contemplated by the by-laws, where reinstatement was within sixty days; and since this had been done by the organization, through its regular channel, and without concealment or misrepresentation or fraud on Johnson's part, the defendant should not be allowed to go on indefinitely receiving assessments and dues, and then when the death against which Johnson was insuring himself should overtake him, to claim, *in effect,* that the requirements for his reinstatement, prescribed by itself, were insufficient.

The organization took no steps during the life of Johnson to set aside the reinstatement, but continued to receive assessments and dues from him, and, after his death, Ford, the Clerk of the local camp at Detroit with whom the transactions as to Johnson's re-

instatement had been had, evidently in the regular course of his business, and on behalf of the defendant, sent additional blanks for proofs of death to the beneficiary, requesting that they be filled out and returned. Proof of such acts tends to establish waiver of forfeiture and acknowledgment of liability.

Forfeitures are never favored by the courts and waiver of forfeiture is possible even in fraternal organizations, in this state, at least. See cases above cited, and Jones v. Knights of Honor, 236 Ill. 113.

As to the alleged error in giving the complained-of instructions, while less concise and exact than might be desired, we do not find substantial error in giving them.

Accordingly the judgment of the court below must be affirmed.

*Affirmed.*