## MID-CONTINENT LIFE INS. CO. v. HOUSE.

No. 21344. Opinion Filed April 5, 1932. Rehearing Denied April 26, 1932.

286

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

Trice & Davison and Ramsey & Howell, for defendant in error.

McNEILL, J. This is an appeal from a judgment rendered by the district court of Coal county, Okla., in favor of the plaintiff, Lloyd C. House, against the defendant, Mid-Continent Life Insurance Company. The parties will be referred to as they appeared in the trial court.

The plaintiff brought the action against said defendant upon two policies of life insurance in the total sum of $10,000, issued by said defendant upon the life of Etta E. House, the wife of said plaintiff, said plaintiff being the beneficiary named in said policies.

The defendant resisted payment on said policies and relied upon two defenses:

(1) Fraud in the procurement of said policies;

(2) That the assured was not in good health at the time the policies were delivered to her.

In reference to the first defense, defendant alleges that the policies sued upon were issued by the defendant to Etta E. House, the wife of plaintiff, upon her written application therefor, in which application the said Etta E. House falsely and fraudulently set forth that, at the time of the execution and delivery thereof to said defendant, the said Etta E. House was in good health; that at the time of the execution and delivery of said application, the said Etta E. House well knew that she was suffering from a disease which she then knew, or could have known by the exercise of reasonable diligence, to be a cancer; that said application was made and furnished to said defendant with the intent and purpose of inducing said defendant to issue to said Etta E. House the policies of insurance in question, and for the purpose of insuring her against disability or death by reason of a disease with which she knew she was afflicted, or could have known by the exercise of reasonable diligence.

As to the second defense, defendant alleged that, under the terms and provisions in each of said policies, said Etta E. House expressly agreed that said defendant should not incur any liability upon said applications until said policies had been issued by said defendant and the first premiums thereon had actually been paid, and until said policies had been delivered to and accepted by the said Etta E. House, during her lifetime and while in good health; that at the time of the delivery of the policies in question, the said Etta E. House was not in good health, but was afflicted with a disease which caused her death; that by reason thereof said policies of insurance did not go into force and effect at the time of the delivery thereof, and were null and void thereafter, and null and void at the time of the death of the said Etta E. House. Defendant prayed that the plaintiff take nothing against said defendant and that the policies be canceled by reason of the foregoing facts and the breach and violation of the terms and provisions set forth in said policies.

It appears from the record that the defendant company had previously solicited insurance on the life of said decedent; that

the deceased had an independent income of her own, from investments and salary in about the sum of $300 a month, and that her husband was carrying one policy of life insurance in the amount of $10,000 in the defendant company, and another policy of like amount in the New York Life Insurance Company, in both of which the said Etta E. House was made the beneficiary; that the insurance agent for the defendant company went to Coalgate after he had been called over the telephone by Mr. House, the plaintiff, who inquired as to when he was coming to Coalgate. The agent called the following day, at Coalgate, but did not find Mr. House and went to the bank where Mrs. House worked and she informed him that she had decided to take out some insurance. The said agent of the company testified that he did not know the business about which Mr. House had called him; that on the night of December 6th he took the applications for the policies in question and informed the deceased that it was necessary for her to go to a doctor for an examination. Dr. Hipes examined the deceased for the company and stated in his report to the company that he unreservedly recommended the applicant as a first class risk; that he was satisfied as to the substantial correctness of all the answers of the applicant; and that he had reviewed all answers and carefully examined the assured. Said agent, who resided at Oklahoma City and was formerly a resident of Coalgate, mailed the policies in question to the deceased, and testified that the same should have reached the deceased on the morning of December 27th.

It further appears from the record that the insured was about 45 years of age, active and vigorous in her work, engaged at the time as assistant receiver in several failed banks, and also assisted her husband in the theater and garage business; that her health had always been good; that on the evening of the 27th of December, 1928, while deceased was hanging some picture frames at the theater, she informed her husband that she had a catch in her arm; that after they went to their home that evening the deceased took a bath; that after she had finished her bath she came to the room where plaintiff was lying down, and for the first time informed him she had a lump on her right breast, which was about the size of a small pecan. The record does not show that she ever knew of its presence before this time.

The record shows that the insured was a Christian Scientist and had followed this form of belief for a period of about 25 years; that she and the plaintiff had been married for a period of about 22 years; that plaintiff, after he had been informed by the deceased in reference to the lump in her breast, went with the deceased to McAlester on the following day, December 28th, to consult Dr. Willour; that deceased received no medical treatment, but left on February 5, 1929, for Boston to the Christian Scientist Benevolent Association; that the insured died on May 10, 1929.

Counsel for defendant group all of their assignments of error under one proposition, as follows:

"That the provision in the application, as follows: 'That the company shall not incur any liability upon this application until the policy has been issued by the company and the first premium has actually been paid to and accepted by the company or its authorized agent and the policy has been delivered to and accepted by me during my lifetime and good health,' constitutes a condition precedent to any liability under the policies, regardless of whether or not Etta E. House knew of the malady with which she was then afflicted, and that since the evidence conclusively established that the insured must have been afflicted with such malady long prior to the making of the application and to the issuance or delivery of the policies the same never came into force or effect, but were void instruments at the time of their issuance and delivery, and at all times thereafter."

Two defenses were interposed on behalf of the defendant. The first defense was based upon fraud in the procurement of the policies by the insured making willful misrepresentations in her application for said policies, with the intent and purpose of inducing the defendant to issue said policies. As to this defense, counsel for defendant admit knowledge was a necessary element. In their brief they state:

"The first defense above admittedly was not established. It was impossible for defendant to develop any evidence whatever to establish knowledge on the part of Mrs. House that she had a lump in her breast the size of a hickory nut at the time she made the application, or at the time she received the policies, regardless of the seeming impossibility that any one of reasonable intelligence could be so afflicted and not know it. * * *

"It is sufficient to state that the defendant was unable to produce any direct evi-

dence tending to establish knowledge on her part of her then condition.

"However, it is the earnest contention of the defendant that its motion for a directed verdict should have been sustained because the evidence conclusively established that the insured, as a physical necessity, must have been afflicted with the fatal disease of cancer for a period of from four months to one year before the policies in question were applied for or issued, and that by reason thereof, the condition precedent of good health at the time of the delivery of the policies did not exist, and that therefore, the policies never became binding contracts of insurance."

In view of the fact that defendant admitted that its first defense in reference to making misrepresentations in the application for the policies in question with the intent and purpose of inducing the defendant to issue said policies because said deceased had a disease with which she knew she was afflicted, or could have known with the use of ordinary diligence, was not established, the remaining question raised by the pleadings was whether or not the policies were delivered to and accepted by the insured during her lifetime and good health. The defendant company contends that Mrs. House was not in good health at the time the policies were delivered to her and that such a provision in the policy was a condition precedent and binding upon the insured. The application for each of the policies provides as follows:

"I declare, on behalf of myself and of any person who shall have or claim any interest on any policy issued herein: (1) That the company shall not incur any liability upon this application until the policy has been issued by the company and the first premium has actually been paid to and accepted by the company or its authorized agent, and the policy has been delivered to and accepted by me during my lifetime and good health."

The questions and answers in reference to the health of decedent are, in part, as follows:

"5. What, if any, changes in occupation or residence have you made, been advised to make or contemplate making on account of your health? None.

"11. Name below all causes for which you have consulted a physician in the last ten years: Illness, Number of attacks. Date. Severity and Duration? A. None.

"12. Are you now in good health, as far as you know and believe? A. Yes.

"13. Has any medical examiner or physician, formally or informally, expressed an unfavorable opinion as to your insurability or health? A. No.

"14. Have you ever had, or been advised to have, any surgical operation? A. No.

"15. Have you ever been under observation, care, or treatment in any hospital, sanitarium, asylum, or similar institution? A. No.

"16. Has your weight increased? A. No, or decreased * * * in the past three years? If so, how much, and cause? * * *

"22. (h) Have you ever had any tumor, or disease of the breast, womb or ovaries? ____ No."

Each of said policies provided:

"This policy and the application therefor, a copy of which is attached hereto, constitute the entire contract between the parties. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall void this policy unless it is contained in such application."

Our court in the case of New York Life Ins. Co. v. Staggs, 95 Okla. 252, 219 Pac. 362, said:

"Where a policy of life insurance provides that all statements made by the insured shall, in the absence of fraud, be construed as representations and not warranties, in order for misrepresentations made by the insured in an application to avail the insurer as a defense, it must show, not only that the statements were not true, but that they were willfully false, fraudulent, and misleading, and made in bad faith."

The rule announced therein has been followed by this court in the following cases: New York Life Ins. Co. v. Clark, 110 Okla. 31, 235 P. 1081; New York Life Ins. Co. v. Smith, 133 Okla. 256, 271 P. 1037; and New York Life Ins. Co. v. Carroll. 154 Okla. 244, 7 P. (2d) 440.

Section 6728, C. O. S. 1921, provides as follows:

"In any claim arising under a policy which has been issued in this state by any life insurance company without previous medical examination or without the knowledge and consent of the insured * * * the statement made in the application shall, in the absence of fraud, be deemed representations and not warranties. * * *"

The policies in question specifically prescribe that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. Under the contract of insurance the decedent did not warrant her condition, but specifically provided that the representations she

made therein, in the absence of fraud, should be deemed representations and not warranties. In insurance law the word "warranty" and the term "condition precedent" are often used interchangeably. Salts v. Prudential Ins. Co., 140 Mo. App. 142, 120 S. W. 714; Mutual L. Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649.

In the case of Inter-Southern Life Ins. Co. v. Ranson (Ark.) 282 S. W. 754, there was a similar provision to those in the policies in question:

"* * * That no contract of insurance shall be deemed made, and no liability upon the part of the company shall arise, until a policy shall be issued and be delivered, * * * and the first premium thereon actually paid, all during my life time, and while I am in good health. * * *"

In that case it was contended by the insurance company that the above provisions constituted a warranty and were in the nature of a condition precedent to any effective contract of insurance. The Supreme Court of the state of Arkansas in that case said:

"We believe that such a construction is contrary to our own cases, and the law generally upon the subject. * * * Similar provisions are usually found in all standard applications for policies of insurance, and are inserted for the benefit of the insurer. The provision above quoted was wholly for the benefit of the appellant. There is nothing in the language used to constitute a warranty on the part of the assured, or a condition precedent to a binding contract of insurance.

"In American Life & Accident Association v. Walton, 133 Ark. 348, 202 S. W. 20, we stated the law upon this subject as follows:

"'The doctrine of warranty, in the law of insurance, is one of greater rigor, and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction'."

Our statute prescribes that in the absence of fraud all statements made by the insured shall be deemed representations and not warranties. The court instructed the jury upon the issue of whether or not the insured was in good health at the time the policies in question were delivered. It would be difficult to determine such a question by any strict or general rule. Whether a person is in good health, as that term is used in its ordinary meaning, depends upon the facts and circumstances gleaned from the evidence in each particular case. The burden of showing that the insured was not in

good health, at the time of the policies in question were delivered, was upon the defendant to prove to the satisfaction of the jury. Federal Life Ins. Co. v. Roberts, 90 Okla. 252, 216 P. 426. See, also: Sovereign Camp of Woodmen of the World v. Jackson, 57 Okla. 318, 157 P. 92; National Council Knights and Ladies of Security v. Owen, 61 Okla. 256, 161 P. 178; Barnes v. Fidelity Mutual Life Association, 191 Pa. 618, 43 Atl. 341; Tobin v. Modern Woodmen of America, 126 Mich. 161, 85 N. W. 472; Hines v. Kansas City Life Insurance Co. (Tex. Civ. App.) 260 S. W. 688; Packard v. Metropolitan Life Insurance Co., 72 N. H. 1, 54 Atl. 287; Johnson v. Modern Woodmen of America, 160 Ill. App. 37. The defendant failed to sustain this burden.

In the case of Sovereign Camp W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017, this court quoted with approval from the case of Greenwood v. Royal Neighbors, 118 Va. 329, and said:

"'The phrase "good health," as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he has no latent disease of which he is wholly unconscious. If by the phrase "good health" an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language.'

"It is doubtless competent for a life insurance company in its policies to take the expression 'sound bodily health' out of its common meaning and make it exclude every disease, whether latent and unknown or not (assuming that any person would ever accept a policy of that kind), but it must do so in distinct and unmistakable language. The mere statement by a party that he warrants himself to be in sound bodily health is not sufficient. Greenwood v. Royal Neighbors, supra."

"'Good health means apparent good health, without any ostensible or known or felt symptom of disorder, and does not exclude the existence of latent unknown defects'."

In the case of Johnson v. Modern Woodmen of America, 160 Ill. App. 37, the Appellate Court of Illinois, says:

"The law does not require that in order to be in good health, Johnson, when reinstated, should have been in perfect health. It has repeatedly been held that the term 'good health,' in referring to life insurance and representing that the insured is in good health, is a comparative expression, and does not mean absolute perfection. If the person

enjoys such health and strength as to justify a reasonable belief, on the part of himself and others, that he is free from serious organic trouble, or from symptoms calculated to cause a reasonable apprehension of such derangement, and if to ordinary observers and outward appearances his health is reasonably such that he might, with ordinary safety, be insured, and upon ordinary terms, the requirement of 'good health' is satisfied."

The trial court at the request of the defendant gave to the jury the following instruction:

"You are further instructed that if you find by a fair preponderance of the evidence that Etta E. House was not in a state of good health at the time of the delivery of the policies, then and in that event you return your verdict in favor of the defendant regardless of whether she knew or did not know of her condition; and in this connection, by 'good health,' is meant free from any serious illness or malady such as has the tendency to shorten human life."

We are of the opinion that this instruction was more favorable to the defendant than the defendant was entitled under the rule announced by this court in the Stagg, Clark, Smith, and Carroll Cases, supra, by reason of the provisions of our statute and the contract entered into in reference to all statements being representations and not warranties. The real purpose of the provisions of the policy, to wit:

"That the company shall not incur any liability upon this application until the policy has been issued by the company and the first premium has actually been paid to and accepted by the company or its authorized agent and the policy has been delivered to and accepted by me during my lifetime and good health"

—is for the benefit of the insurance company, for the purpose of protecting the insurance company from the date of the issuance of the policy and its delivery to the assured by reason of any new element of risk on account of a change in the condition of the applicant occurring after the company's investigation has been made. If there are provisions in any insurance policy "which are reasonably subject to conflicting interpretations, * * * they must be construed strictly against the company. They must be given such construction as will effectuate and sustain, rather than defeat, the object of the parties in entering into them." Mumaw v. Western & Southern Life Ins. Co. (Ohio) 119 N. E. 132. It is to be observed that this provision of the contract does not date from the date of the application, but it is from the issuance of the policy to the time of the delivery of the same to the insured.

In the case of Priest v. Kansas City Life Ins. Co., 227 Pac. 538, the Supreme Court of Kansas said:

"The policy contained the familiar provision that it should not take effect 'unless the applicant is in good health at the time of its delivery.' We do not interpret this to mean that no contract of insurance results if the insured at the time he made his application suffered from an ailment of which he was not conscious and which still existed when he received the policy. Where without misrepresentation on the part of the applicant an insurance company after due investigation accepts the risk, and a post mortem examination reveals that the seeds of a fatal disease existed before the acceptance, the clause referred to will not avail to defeat the collection of the policy. Although a different view is sometimes taken, we consider its purpose and effect to be to protect the company against a new element of risk through a change in the condition of the applicant, occurring after the company's investigation had been made."

In New York Life Ins. Co. v. Smith, 91 So. 456, the Supreme Court of Mississippi said:

"Where an application for a life insurance policy, which by its terms became a part of the contract of insurance, provides, among other things, that the policy applied for shall not take effect until delivered to and received by the insured during his lifetime, 'while in good health,' and the evidence shows that insured, although not in good health, was in the same condition of health at the time of the delivery of the policy as he was at the time of his application therefor, the said provision in the application was not violated, because it only meant that the defendant's health had not undergone any change between the date of the application for and the delivery of the policy."

In the case of Fairfield v. Union Life Ins. Co., 196 Ill. App. 7, it was said:

"The defendant placed in evidence the applications of the insured for the policies in question and the record of the examination made by its medical examiner in connection with said applications. The obvious purpose of propounding the questions in the applications, and of making a medical examination of the insured before issuing the policies, was to determine his general state of health at that time. That the defendant considered the health of the insured satisfactory is evidenced by the delivery of the policies and the acceptance of the first year's premiums. The record herein shows that a period of time elapsed between the date of the applications and the medical examination above referred to, and the delivery of the policies.

It is fair to presume that this situation arises in almost every instance where the defendant issues a policy. In that interim the insured may have become seriously ill or suffered a severe injury greatly impairing his health. It is therefore fair to presume that the provision that said policy 'shall not take effect until the first premium has actually been paid to and accepted by the company and the policy delivered to and accepted by the insured while in good health,' was intended to safeguard the defendant against any contingencies that might arise during such interim, and not as a condition precedent for the plaintiff to aver and prove; and as there is no contention that such contingency has arisen in the case at bar, the provision here under consideration can have no application."

See, also, Metropolitan Life Ins. Co. v. Taylor's Adm'r, 249 Ky. 549, 293 S. W. 1061; Metropolitan Life Ins Co. v. Walters, 215 Ky. 379, 285 S. W. 252, 60 A. L. R. 194; National Life & Accident Ins. Co. v. Jones (Ky.) 18 S. W. (2d) 982; Etter v. National Life & Accident Co., 228 Ky. 399, 15 S. W. (2d) 242; Chinery v. Metropolitan Life Ins. Co., 182 N. Y. S. 555; Majoria Fairfield v. Union Life Ins. Co., 196 Ill. App. 7; New York Life Insurance Co. v. Smith (Miss.) 91 So. 456; Western & Southern Life Ins. Co. v. Davis (Ky.) 132 S. W. 410; Mutual Life Ins. Co. of New York v. Hoffman (Ind.) 133 N. E. 405. There is authority to the contrary, but we are of the opinion that such a provision in the contract in question in reference to the delivery of the policy is for the purpose of protecting the insurance company against a risk which may arise between the time when the company has made its examination of the insured, and the time of the issuance and delivery of the policy, and that it was never intended that such a provision should constitute a warranty or a condition precedent to a binding contract of insurance. It frequently happens that in the interim between a physical examination and the date of the issuance and delivery of the policy to the insured the insured meets with some accident, becomes seriously ill, or becomes deceased. In such event the insurance company should be protected against such contingencies, unless such conditions are waived on behalf of the insurance company.

In the instant case there is nothing in the record to indicate that there was any change in the condition of the deceased from the time of making her application to the time the policies were delivered to her.

We consider it unnecessary to review the evidence in this case. The issues were joined and all of the facts and circumstances were submitted to the jury under instructions which fairly presented the issues, but the law, given as applicable thereto, was more favorable to the defendant than it was entitled to receive.

We find no prejudicial error, and the judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, HEFNER, ANDREWS, and KORNEGAY, JJ., concur. RILEY, J., absent.