## NATIONAL AID LIFE ASS'N v. PERSING et al.

No. 26027.  Dec. 17, 1935.

Rehearing Denied Dec. 22, 1936.

Snyder, Owen & Lybrand, for plaintiff in error.

R. J. Shive, Brown Moore, and Wilcox & Swank, for defendants in error.

PER CURIAM. This is an appeal from a judgment rendered in the district court of Payne county, Okla., in favor of the plaintiffs, W. G. Persing and Edna M. Briggs, against the defendant, National Aid Life Association, a corporation. The parties will be referred to as they appeared in the trial court.

The action is based upon the life insurance policy issued by the defendant upon the life of Isabell Persing in the amount of $2,500. The original policy dated April 3, 1925, named O. W. Persing, the then husband of the assured, as the beneficiary. Later the policy was changed naming the plaintiffs as joint beneficiaries. Isabell Persing died August 29, 1933.

On December 27, 1931, assured permitted the policy to lapse through failure to pay the assessment due, and on January 8, 1932, applied for reinstatement and paid the assessment due. Again on the 26th day of June, 1932, the assured failed to pay the assessment due, and on the 6th day of July, 1932, applied for a reinstatement and paid the amount due; otherwise, all assessments were paid when due. In both instances when application was made for reinstatement assured signed the following "Certificate of Good Health":

"As a basis for this application for reinstatement I hereby certify and warrant that I am in sound health, free from either acute or chronic ailment of any kind; that within the last six months I have had no illness, that I have neither consulted nor been under the care of any physician or surgeon during said last six months. I further understand and agree that this certificate is a consideration for my reinstatement, and that if it contains any false statements, same will be considered a breach of warranty, and will relieve the aforesaid association from any obligation to me during my lifetime, or to my beneficiaries in case of my death.

"By reference I make my former application a part hereof."

The original application contains the following language:

"The applicant assumes the entire burden of making full and true statements and revelations as to his bodily condition and history, and of fully informing himself with reference thereto before signing and delivering this application; and he further expressly agrees that no lack of knowledge with reference thereto to any extent whatever excuse him for any error or misrepresentation made herein."

The defendant refused payment on the ground that Isabell Persing died as a result of cancer which antidated both applications for reinstatement; defendant contending that under the applications assured warranted all statements, and hence no liability accrued, if the cancer originated prior to the date of the original or either of the subsequent applications.

It appears from the record that the as-

sured in June, 1932, accepted employment as a housekeeper where she remained until November, 1932, doing general housework for Mrs. Oldfather of Wichita. During all of that time she was in apparent good health and there was nothing to indicate anything wrong with her physically. Mrs. Reece testified that she saw the assured frequently during the time she was employed in Wichita and that she was apparently very well; that their relations were intimate and that at no time was there anything that would indicate that there was anything wrong. A small lump in the breast was discovered in February, 1933. It further appears from the record that in 1931, assured spoke of the lump in her breast and witness urged her to have it examined and find out what it was; that witness suggested that the assured go to a doctor to which assured replied that she did not "go much on doctors," and if examined she supposed "they might say she had cancer." Expert testimony was to the effect that cancerous growth beginning in the breast of a woman might begin by a condition below the surface of the skin and that it would be hard to determine there was such a growth, and that there would be no pain, and that the patient would discover it accidentally.

In March, 1933, a physician was called and made an examination and diagnosed her condition as being cancerous. The physician testified "it seemed she did not realize the condition, the seriousness of the condition she was in just from her talk." A surgical operation was suggested and the record discloses that she was operated on soon thereafter.

The defendant in its brief limits the question to be decided as follows:

"The real and ultimate question at issue in this case is whether or not Isabell Persing, the holder of a certain benefit certificate theretofore issued by the defendant, was on the 8th day of January, 1932, free from acute and chronic diseases of every kind (that being the date of her first application for reinstatement); also, whether or not she was free from acute or chronic diseases of every kind on the 6th day of July, 1932 (that being the date of her application for a second reinstatement.)"

On this point the court instructed the jury:

"You are further instructed that if at the time the benefit certificate in question was delivered to the insured and the various reinstatements of said certificate were approved and granted by the defendant, as shown by the evidence herein, she was in sound health, the plaintiffs are entitled to recover in this case, and in this connection you are instructed that by being in sound health is meant that at the time of the delivery of said benefit certificate and of the reinstatements thereof into full force and effect, she did not have any disease of a serious nature, and if you believe from the evidence that at such times she was not sick nor suffering from a serious ailment, then you will find for the plaintiff."

This court in the case of Sovereign Camp of W. O. W. v. Jackson, 57 Okla. 318, 157 P. 92, used the following language:

"The question as to whether the deceased was in good health when the benefit certificate was issued to him, or not, is purely a question of fact."

Again, in Mid-Continent Life Insurance Co. v. House, 156 Okla. 285, 10 P. (2d) 718, this court in an exhaustive opinion citing an array of authorities held:

"Whether a person is in good health as that term is used in its ordinary meaning at the time of the delivery of an insurance policy must depend upon the facts and circumstances of each given case, and cannot be determined by any general rule. Such questions are for the determination of a jury or the court sitting as a jury as the trier of the facts."

Recently the question was again before this court in National Life & Accident Insurance Co. v. Wicker, 171 Okla. 241, 43 P. (2d) 50, citing the previous decisions, supra; the court held:

"The phrase 'good health,' as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. He does not mean that he had no latent disease of which he is wholly unconscious. If by the phrase 'good health' an insurance company desires to exclude every disease, though latent and unknown, it must do so by distinct and unmistakable language.

"Where a person is in 'good health,' as that term is used in its ordinary meaning at the time of the delivery of an insurance policy, must depend upon the facts and circumstances of each given case and cannot be determined by any general rule. Such questions are for the determination of a jury or the court sitting as a jury as the trier of the facts."

In this case the question of the good health of the assured was submitted to the jury under an instruction favorable to the defendant. There is competent evidence in

support of plaintiff's theory that the insured was in good health at the time of the delivery and reinstatements of the policy as defined by this court. We find no error in the judgment of the trial court, and the judgment will be affirmed.

The Supreme Court acknowledges the aid of Attorneys J. F. Lawrence, W. F. Semple, and R. E. Morgan in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council. and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lawrence and approved by Mr. Semple and Mr. Morgan, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and GIBSON, JJ., concur.